IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION


**JAMES PICKENS**                                                                                           **PLAINTIFF**

**VS.**                                                                          **Civil Action No. 3:16cv-913-CWR-FKB**


**MANAGEMENT & TRAINING CORPORATION**                                          **DEFENDANTS**
**LEPHER JENKINS, WARDEN, IN HIS OFFICIAL CAPACITY**
**GRADY WALLACE, IN HIS OFFICIAL CAPACITY**
**TERRY DANIEL, CHIEF OF SECURITY, IN HIS OFFICIAL CAPACITY**
**AMEDIO COLANGELO, IN HIS OFFICIAL CAPACITY**
**KAREN MOOREHEAD, IN HER OFFICIAL CAPACITY**
**AND JOHN AND JANE DOES 1-94**
                                                                                                        *JuryTrial Demanded*

**FIRST AMENDED COMPLAINT**
*Jury Trial Demanded*

COMES NOW the Plaintiff, James Pickens, and in support of this, his First Amended Complaint for damages against the Defendants and John and Jane Does 1-94, respectfully alleges the following:

**PARTIES**

1.      Plaintiff, James Pickens, ("Plaintiff") is an adult resident citizen of the State of Mississippi.

2.      Defendant, Management & Training Corporation (hereinafter "MTC"), is a foreign corporation organized and existing in accordance with the laws of the State of Utah, with its principal place of business being located at 500 North Market Place Drive, Centerville, Utah 84014. It may be served with process by its registered agent for service of process, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

1

3. John and Jane Does 1-94 (Defendants) are fictitious and unknown MTC officers, employees, agents, and/or servants who may be responsible parties whose negligent acts caused or contributed to the Plaintiff's injuries. The identity of this party or the identities of these parties are unknown at this time and can only be ascertained through the use of judicial mechanisms such as discovery. Upon learning the identity of this party or parties, the Plaintiff may substitute it/them for the fictitious parties under Rule 9(h). Alternatively, in the event that the Plaintiff has sued the wrong party and is required to change parties, such amendment will be made in accordance with Rule 15(c).

4. Defendant Lepher Jenkins was the Warden of WGFC at all relevant times alleged herein.

5. Defendant Grady Wallace was the Deputy Warden of WGCF at all relevant times alleged herein.

6. Defendant Shaniece Mabry was the Deputy Warden of WGCF at all relevant times alleged herein.

7. Terry Daniel was Chief of Security of WGCF at all relevant times alleged herein.

8. Amedio Colangelo was a ranking correctional officer of WCGF at all relevant times alleged herein.

9. Karen Moorehead was a ranking correctional officer of WCGF at all relevant times alleged herein.

## JURISDICTION AND VENUE

10. This Court has personal jurisdiction over the parties.

11. Subject matter jurisdiction is appropriate in federal court since a federal question is raised pursuant to 42 U.S.C. §1983 as well as the 8th and 14th Amendments to the United

States Constitution.  This Court also has subject matter jurisdiction over this cause pursuant to pursuant to Title 28 U.S.C §1332 as the matter in controversy exceeds the value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

12. Venue is proper in the United States District Court for the Southern District of Mississippi, Northern Division pursuant to Title 28 U.S.C §1391 as same is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## FACTS

13. Plaintiff incorporates the preceding paragraphs as if fully rewritten herein.

14. MTC was awarded a contract by the Mississippi Department of Corrections in 2012 for the management and oversight of the Walnut Grove Correctional Facility (hereinafter "WGCF").

15. MTC's operation of the facility was regulated and monitored by a federal court consent decree entered in 2012.

16. Despite the fact that the facility was under a consent decree, conditions at the facility were not reasonably safe for inmates.

17. The conditions that existed before and on July 10, 2014, the date of the subject incident, including an unacceptable degree of gang activity that compromised security and safety that contributed to employee and inmate fraternization, inmate and employee collusion and graft that undermined security and safety; inadequate training and staffing, inadequate supervision, inadequate training and enforcement of core values, failure to perform and enforce standard operating procedures for the safe and efficient prison operations all directed at inmate security and control resulting in prior assaults.

18. Specifically, the conditions existing at the time of the occurrence included faulty or altered locks or locks that could be opened by certain prisoners at will.  MTC supervisors and

employees were aware that prisoners had altered the locks on their doors which allowed prisoners to open doors at a time of their choosing. Defendant failed to take adequate measures to ensure that the defective locks or doors were repaired or replaced and failed to ensure that they were examined for effectiveness or being altered.

19. An atmosphere of violence fueled by uncontrolled gang activity spawning the ready availability of drugs, weapons and other contraband that flowed into the prison; and an unabated level of gang activity that undermined effective institutional control of the facility. The MTC supervisors and employees were aware of such illicit activity and colluded with prisoners to facilitate such activity or simply ignored the illicit practices. MTC failed to implement reasonable and achievable policies to reduce gang activity and its foreseeable consequences despite its knowledge that such an unreasonable risk of harm existed due to gang activity or applied such measures or half-measures with negligence, gross negligence and/or deliberate indifference.

20. MTC supervisors and its employees failed to conduct adequate and legitimate inspections of prisoner cells and belongings for contraband. MTC employees would either ignore contraband if stumbled upon, or simply ignore it and not report it due to collusion or fear of retaliation.

21. On July 10, 2014, James Pickens was a prisoner housed at WGCF. Pickens was specifically housed within Unit 3 Charlie and locked and bolted within his cell before the occurrence.

22. On July 10, 2014, at approximately 9:45 p.m., a group of inmates who were not locked in their cells, initiated an inmate on inmate attack or fight as a consequence of an attempt by someone to smuggle contraband into the facility.

23. The group of inmates as referenced hereinabove let other inmates out of their cells to participate in the fight.

24. As the fight continued and the security situation deteriorated, a number of inmates opened the Plaintiff's cell with a shank and began attacking him with knives and any other object available that could be used to inflict physical harm upon him.

25. At all pertinent times herein after the Defendant had actual notice of the riot and assault in question, its response to both were inadequate to quell the riot or restore order.

26. The assault upon the Plaintiff continued for an extended period of time resulting in further injury while the prison guards failed to restore order and security.

27. Said incident caused injuries to Plaintiff, particularly injuries to his right eye, neck, lower back and head injuries resulting in chronic headaches.

## CAUSES OF ACTION
### Count I:  §1983 Causes of Action

28. Plaintiff incorporates the preceding paragraphs as if full rewritten herein.

29. By and through Defendants' deliberate indifference to the safety of the Plaintiff and other inmates on the date of the occurrence, and the establishment of customs, policies and practices which created unconstitutional conditions of confinement, Defendants violated the clearly established constitutional rights of the Plaintiff, including but not limited to:

(a) Cruel and unusual punishment under the 8th and 14th Amendments;

(b) Plaintiff's right not to be deprived of liberty without due process of law;

(c) Plaintiff's right to be safe and protected from injuries while in Defendants' custody;

(d) Plaintiff's right to be protected by the prison officials and guards while under their control; and

    (e)    Plaintiff's right to be free from excessive and unreasonable force.

30. As a direct and foreseeable result of Defendants' actions and omissions, Plaintiff suffered damages including but not limited to, severe physical injuries, past, present and future medical expenses, emotional, distress, mental pain and suffering, permanent impairment, disability and loss of wage earning capacity.

31. Defendants, in their official capacities, established customs, policies and practices which directly and proximately caused the deprivation of the Plaintiff's constitutional rights as alleged herein. By their policies and practices described herein, Defendants subjected the Plaintiff to substantial risk of harm by failing to protect from violence, ignoring by act or omission, emergency situations, and enabling violent attack on the Plaintiff. These policies and practices were implemented by the Defendants and their agents, officials, employees and all persons acting in concert with them under color of state law, in their official capacities, and are the cause of the Plaintiff's deprivation of rights secured by the United States Constitution under the Eighth and Fourteenth Amendments and federal law. Defendants were deliberately indifferent to the safety of the Plaintiff and other WGCF inmates.

32. Defendants were aware of all the deprivations complained of herein, and have condoned or were deliberately indifferent to such conduct.

33. These policies created unconstitutional conditions of confinement.

34. Such unwritten policies, customs and practices include but are not limited to the following:

    (a)    Inadequate and improper planning and training, including but not limited to emergency response planning and training, supervision and discipline of WGCF officers;

(b) Inadequate and improper procedures and practices in screening, hiring, training, supervising and disciplining officers who practice, condone or use excessive force upon WGCF inmates, including the Plaintiff in violation of their constitutional rights;

(c) Inadequate and improper procedures, policies and practices for investigating improper activities by WGCF correctional officers either through offender complaints of misconduct or through internally-initiated complaints or investigations;

(d) Inadequate or improper procedures, policies and practices for identifying and taking appropriate action against WGCF correctional officers who are in need of retraining, corrective measure, reassignment, or other non-disciplinary actions through a positive or early warning system designed to prevent the violation of inmates' rights.

(e) Failing to prevent and/or investigate allegations of improper relationships between WGCF correctional officers and WGCF inmates which directly led to the subject assault; and

(f) Failing to adequately staff WGCF with trained and qualified guards and allowing the prison to be understaffed.

(g) Failing to supervise, monitor and comply with the contract entered into between the Defendants;

## Count II: Negligence

35. Plaintiff incorporates the preceding paragraphs as if fully rewritten herein.

7

36. Defendant, Management & Training Corporation and all private actor Defendants, at pertinent times alleged herein, were under a duty to exercise reasonable care in the operation of the prison facility to ensure the safety of those under its charge.

37. Said Defendants breached this duty by failing to exercise reasonable care in the operation of the facility in question. Sais Defendants failed to maintain the facility in a reasonably safe condition or otherwise control the conditions which caused injury to the Plaintiff.

### Count III: Inadequate Screening, Hiring, Staffing, Negligent Training & Supervision

38. Plaintiff incorporates the preceding paragraphs as if fully rewritten herein.

39. Defendant Management & Training Corporation and private actor Defendants were charged with the duty to properly and adequately screen, hire, staff, train, instruct, supervise and oversee its employees in the proper operation of the facility of in question

40. Defendant Management & Training Corporation and private actor Defendants negligently, or grossly negligently, screened, hired, staffed, supervised and retained its employees, inter alia, by failing to properly staff, screen, review, select, hire, retain, discipline, and/or discharge its employees, agents, and/or representatives; and were otherwise negligent or grossly negligent in their care and treatment of the Plaintiff, and as a direct and proximate result, the Plaintiff sustained the harms alleged herein.

41. Said Defendants' negligent failure to discharge its duties in these regards constitutes negligence and/or gross negligence and is a breach of the duty of reasonable care owed to the Plaintiff resulting in the aforementioned hazardous condition which proximately caused the occurrence as well as the Plaintiff's injuries and damages.

42. Defendants' breach of these duties was a proximate and contributing cause and/or concurrent cause of the incident and the resulting injuries to the Plaintiff.

## RESPONDEAT SUPERIOR

43. Plaintiff incorporates the preceding paragraphs as if fully rewritten herein.

44. The Defendant, Management & Training Corporation, acted with negligence, gross negligence and/or intentionally allowed or failed to prevent the Plaintiff's assault on the date of the occurrence. At all times relevant, each Defendant owed a duty to the Plaintiff to ensure his safety, and the Defendants breached this duty. The actions and inactions of the Defendant led directly to the injuries sustained by the Plaintiff. Defendant Management & Training Corporation, as the employer is liable for actions or inactions that were undertaken by and through their employees during the course and scope of their employment for or on behalf of MTC.

45. Defendant Management & Training Corporation is also responsible for the actions and/or inactions alleged herein attributable to its employees which directly caused the damages sustained by the Plaintiff. Such actions and/or inactions by said individual Defendants were committed with the course and scope of their employment with Defendant MTC.

## DAMAGES

46. Plaintiff incorporates the preceding paragraphs as if fully rewritten herein.

47. As a further direct and proximate cause of Defendants' disregard for Plaintiff's safety and well being and other negligent acts, Plaintiff suffered serious bodily injuries, including but not limited to monetary damages. These damages include, but are not limited to the following:

   a. past, present and future medical expenses;

b.  past, present and future physical pain and suffering;

c.  future lost wages and loss of wage earning capacity;

d.  permanent disability;

e.  past, present and future mental and emotional distress;

f.  inconvenience and discomfort and

g.  any other relief, which the Court or jury deems just or appropriate based upon the circumstances.

## PUNITIVE DAMAGES

48. Plaintiff incorporates the preceding paragraphs as if fully rewritten herein.

49. The acts and omissions of the Defendants described herein constitute a willful, wanton, grossly negligent conduct and reckless disregard for the safety of all WGCF inmates, including the Plaintiff, and such acts and omissions constitute gross negligence and evince a complete disregard for the safety of the Plaintiff that directly caused the Plaintiff's bodily injuries and other damages, for all of which the Defendants are liable for punitive damages and attorney's fees in an amount to be determined by the jury.

50. Based upon the Defendants' actions and inactions as aforesaid, the Defendants' actions warrant the imposition of punitive damages. Plaintiff seeks punitive damages and punitive damages should be assessed against the Defendants.

## PRAYER FOR RELIEF

Plaintiff requests jury trial and seeks the following relief:

A.  Compensatory damages of from and against the Defendants, each and severally, in an amount to be determined by this Court.

B.  Non-pecuniary damages of from and against the Defendants, each and severally, in an amount to be determined by this Court.

C.  Punitive damages of from and against the Defendants in an amount to be determined by this Court.

D.  Attorney's fees and all costs of court.

E.  Pre and post judgment interest.

F.  Such other general and special relief as appears reasonable and just in this cause.

        Respectfully submitted,

        JAMES PICKENS,
        PLAINTIFF

        By:    _s/Yancy B. Burns_____
                YANCY B. BURNS (MSB #99128)

OF COUNSEL:

YANCY B. BURNS, Esq. (MS BAR #99128)
SHANDA M. YATES, Esq. (MS BAR #102687)
***Burns & Associates, PLLC***
Post Office Box 16409
Jackson, Mississippi 39236-6409
Telephone (601) 487-6997
Facsimile (601) 487-6958
Email: yburns@burnsandassociateslaw.com
Email: syates@burnsandassociateslaw.com

11