# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

JAMES PICKENS                                                              PLAINTIFF

V.                                                     CAUSE NO. 3:16-cv-00913-CWR-FKB

MANAGEMENT & TRAINING CORP.,                      DEFENDANTS
et al.

## ORDER

In 2014, James Pickens, an inmate at Walnut Grove Correctional Facility, allegedly sustained serious injuries during a riot. Walnut Grove was operated at the time by Management & Training Corporation, an independent contractor hired by the Mississippi Department of Corrections.[1] In 2016, Pickens was released from Walnut Grove on earned-release supervision. Pickens filed this suit after his release, bringing federal law and state law claims against MTC regarding his injuries. MTC has moved for summary judgment, arguing that Pickens' claims were not properly exhausted. For the reasons discussed below, MTC's motion must be DENIED.

**I. Discussion**

MTC argues that (1) Pickens' federal law claims were not exhausted as required by the Prison Litigation Reform Act and (2) Pickens' state law claims were not exhausted as required by Miss. Code Ann. §§ 47-5-801 *et. seq.* Pickens does not contend that he exhausted his claims under either statute. Rather, he argues that his claims are not subject to those statutes' exhaustion requirements to begin with. Each statute will be addressed in turn.

---

[1] MTC's contract with MDOC states that MTC was an "independent contractor" who retained "the sole right to manage, control, operate and direct the performance of the details of its duties." Management & Operations Agreement, Contract No. 78708, Oct. 25, 2012, available at transparency.ms.gov.

### A. Does The PLRA Apply To Pickens' Federal Law Claims?

The PLRA bans the filing of any unexhausted federal claim relating to prison conditions by a particular class of people, namely, "prisoner[s]" who are "confined" in "any jail, prison, or other correctional facility."[2] Thus, a person's status at the time he files his lawsuit determines whether the PLRA's ban applies to his claims. While neither the Supreme Court nor the Fifth Circuit has explicitly affirmed this finding, "[e]very circuit court to consider this issue" has.[3] And the Fifth Circuit has indicated that it would likely follow in these courts' footsteps, as it has refused to apply other parts of the PLRA to persons not "confined" when they filed their claims in court.[4]

This Court, then, will focus on Pickens' status at the time his lawsuit was filed. That status was this: living in his grandmother's house on earned-release supervision.[5] Thus, the PLRA applies to Pickens' claims only if two statements are true: (1) a person on earned-release supervision is a "prisoner," and (2) Pickens' grandmother's house is a "correctional facility" in which Pickens was "confined." As discussed below, neither statement is true.

#### 1. Is a Person on Earned-Release Supervision a "Prisoner"?

The PLRA defines "prisoner" as "any person incarcerated or detained in any facility" for an actual or alleged violation of criminal law.[6] The statute does *not* define "prisoner" as "a person labelled as such by the state." In determining whether a person on earned-release supervision is a

---

[2] 42 U.S.C. §1997e(a).
[3] *See Caddell v. Livingston*, No. 4:14-CV-3323, 2015 WL 1247003, at *2 (S.D. Tex. Mar. 17, 2015) (citing *Lesene v. Doe*, 712 F.3d 584 (D.C. Cir. 2013); *Talamantes v. Leyva*, 575 F.3d 1021 (9th Cir. 2009); *Cofield v. Bowser*, 247 F. App'x 412 (4th Cir. 2007); *Norton v. The City of Marietta, OK*, 432 F.3d 1145 (10th Cir. 2005); *Nerness v. Johnson*, 401 F.3d 874 (8th Cir. 2005); *Ahmed v. Dragovich*, 297 F.3d 201 (3rd Cir. 2002); *Greig v. Goord*, 169 F.3d 165 (2nd Cir. 1999)); *see also Witzke v. Femal*, 376 F.3d 744 (7th Cir. 2004); *Bell v. Zuercher*, No. 10-72-ART, 2011 WL 5191800, at *2 (E.D. Ky. Oct. 31, 2011) ("[T]he PLRA does not apply to former prisoners, even though the claim may have arisen while the Plaintiff was previously incarcerated.") (citation omitted).
[4] *Janes v. Hernandez*, 215 F.3d 541, 543 (5th Cir. 2000) ("Because [the plaintiff] was not a prisoner when this complaint was filed, the fee limits of the [PLRA] did not apply.").
[5] This information appears on Pickens' certificate of earned-release supervision, located at Docket No. 37-1.
[6] 42 U.S.C. § 1997e(h).

2

"prisoner," then, this Court must peer past labels to examine the restrictions placed on a person's liberty.

It is true that state law establishes that people on earned-release supervision "retain inmate status."[7] But "inmate status" appears to merely indicate that a person remains "under the jurisdiction of [MDOC]."[8] In this sense, people on earned-release supervision are no different than people on parole, who also remain "under the supervision of [MDOC]."[9]

This similarity is unsurprising, as earned-supervised release is functionally identical to parole. The statute creating the former makes clear that a "period of earned-release supervision shall be conducted in the same manner as a period of supervised parole."[10] The only substantive difference between earned-supervise release and parole are the programs' pre-release eligibility requirements, not their post-release restrictions on liberty.[11] The programs are so similar that the Mississippi Supreme Court has occasionally referred to one as the other.[12]

This equivalence is important. Persons on parole have been "released from incarceration to the general public," and are therefore not prisoners under the PLRA.[13] As persons on earned-release supervision are released to the general public in the same way, they are also not prisoners under the PLRA. The statue will accordingly not apply to claims filed by persons, like Pickens, who are on earned-release supervision.

---

[7] Miss. Code. Ann. § 47-5-138.
[8] *Id*.
[9] Miss. Code. Ann. § 47-7-33.
[10] Miss. Code Ann. § 47-5-138; *see also* Miss. Code Ann. § 47-7-27 (establishing that violations of the conditions of earned-release supervision are to be treated identically to violations of the conditions of parole).
[11] *See Puckett v. Abels*, 684 So. 2d 671, 678 (Miss. 1996) (describing supervised release programs).
[12] *See, e.g., id.* (noting that earned-release supervision functions to "den[y] the opportunity for parole, prior to serving eighty-five percent (85%) of [a] sentence").
[13] *Jackson v. Johnson*, 475 F.3d 261, 265 (5th Cir. 2007).

## 2. Was Pickens' Grandmother's House a "Correctional Facility"?

The PLRA does not define the phrase "confined in . . . [any] correctional facility." The Fifth Circuit has not defined the term either. However, the Fifth Circuit has indicated that a private residence where a person on earned-supervised release resides is not a "correctional facility." In holding that the PLRA's definition of "prisoner" includes people detained in a halfway house – which Pickens' grandmother's home certainly is not[14] – the Fifth Circuit emphasized that detention in such a house occurs "*prior* [to] being released to parole or mandatory supervision."[15] Pickens' grandmother's home is a private residence where Pickens resided *after* being released to earned-release supervision. Such a residence is not a "correctional facility" in which Pickens was "confined," and the PLRA will therefore not apply to Pickens' claims.

## B. Does the State Exhaustion Requirement Apply to Pickens' State Law Claims?

With the federal exhaustion requirement disposed of, this Court turns to the state exhaustion requirement, Miss. Code Ann. §§ 47-5-801 *et. seq.* ("the Act"). The Act bars courts from hearing the unexhausted claims of an "offender" which fall "under the purview of [MDOC's] administrative review procedure."[16] That purview is limited to "any cause of action such offenders may claim to have against the State of Mississippi, the Department of Corrections or its officials or employees."[17] As demonstrated below, a proper reading of the statute leads to one conclusion:

---

[14] There is no evidence in the record that Pickens' grandmother's home is a halfway house. MTC has not made any argument to the contrary. Neither the Mississippi Code nor MDOC regulations appear to define "halfway home." Dictionary definitions, however, establish that the term does not apply to a private residence like Pickens' grandmother's home. *See, e.g.,* BLACK'S LAW DICTIONARY 828 (10th ed.) (defining halfway house as "a transitional housing facility *designed to rehabilitate* people who have recently left a prison or medical care facility, or who otherwise need help in adjusting to unsupervised living") (emphasis added).
[15] *Jackson*, 475 F.3d at 267 (emphasis added). This comports with the definition of "correctional facility" adopted by the Fourth and Seventh Circuits, which focuses on the constraints on the person's liberty at a given location, rather than that location's formal title. *See Witzke*, 376 F.3d at 753; *Alexander S. v. Boyd*, 113 F.3d 1373, 1383 (4th Cir.1997).
[16] Miss. Code Ann. § 47-5-803.
[17] *Id*. § 47-5-802.

only those claims against actual officials or employees of the Department of Corrections need be exhausted before they are allowed to proceed.

Pickens does not dispute that he was an "offender" whose claims were unexhausted at the time he filed this suit.[18] What Pickens argues is that his claims need not have been exhausted; they do not fall "under the purview" of MDOC's administrative review procedure because an independent contractor like MTC is not among MDOC's "officials or employees."

This question raises a novel, but uncomplicated issue of state law. Neither the Mississippi Supreme Court nor the Fifth Circuit has determined whether independent prison contractors are MDOC "officials or employees."[19] In many cases, federal courts are poorly equipped to make such a determination of state law, and should decline supplemental jurisdiction over claims that require that kind of adjudication.[20] This is not one of those cases. This Court is well-suited to interpret a small, unambiguous portion of a state statute.[21] This Court will retain jurisdiction over Pickens' state law claims to do so.

---

[18] *See* Miss. Code Ann. § 47-5-138 (providing that persons placed under earned-release supervision "shall retain inmate status and remain under the jurisdiction of the department").
[19] *See also Evans v. Mgmt. & Training Corp.*, No. 3:15-cv-770-DPJ-FKB, 2017 WL 78803, at *3 (S.D. Miss. Jan. 6, 2017) ("As for relevant case law [the Court has not] found any binding authority analyzing whether [Miss. Code Ann. § 47-5-803] applies to officials and employees of a private prison.").
[20] *Enochs v. Lampasas Cty.*, 641 F.3d 155, 160 (5th Cir. 2011).
[21] This Court must weigh both common law and statutory factors in deciding if it is appropriate to decline supplemental jurisdiction over Pickens' state-law claims. *Id.* at 159. The relevant common law factors are "the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (cited in *Enochs*, 641 F.3d at 159). Dismissing Pickens' claims and forcing them to be refiled in state court would undermine the first three values. The final value, comity, is not seriously threatened because Pickens' claims raise novel issues of state law that are simple, not "difficult." *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 589 (5th Cir. 1992). The common law factors, on balance, do not weigh in favor of declining jurisdiction. The same can be said of the four statutory factors listed at 28 U.S.C. § 1367. Pickens' federal law claims have not been dismissed, nor do they substantially predominate over his state claims. Furthermore, there are no exceptional circumstances on the record. True, Pickens' claims raise a novel question of state law. But, as noted above, the issue's novelty is outweighed by its simplicity. The statutory factors, like the common law factors, weigh against declining supplemental jurisdiction.

The Act does not qualify the term "officials or employees," nor does it refer to private contractors or prisons. The Mississippi Supreme Court counsels that, when confronted with such a self-evident statute, there is no reason to resort to statutory construction.[22] The Act straightforwardly does not apply to independent contractors, who are not state officials or employees.

To the extent one needs to construe a statute by drilling through it, this Court must examine a statute's "plain language in context with its design, object and policy."[23] That language is conclusive so long as it is "unambiguous and does not lead to an absurd result."[24] "There is no safer or better settled canon of interpretation than [this:] where language is clear and unambiguous it must be held to mean what it plainly expresses."[25] What matters are words the legislature has actually written, not the words it may have intended to write.[26]

This Court will therefore "assume the legislature knew the plain and ordinary meanings of the words it chose to include" in the Act.[27] The legislature chose those words in 1989,[28] and their ordinary meanings can be ascertained by examining the then-current edition of Black's Law Dictionary.[29] That text defined *official* as "officer," and noted that "[i]n determining whether one is an 'officer' or 'employee,' important tests [include] whether it is created by an appointment or election, or merely by a contract of employment."[30] The definition of *employee*, meanwhile,

---

[22] *See Lawson v. Honeywell, Int'l, Inc.*, 75 So.3d 1024, 1027 ("If the words of a statute are clear and unambiguous, the Court applies the plain meaning of the statute and refrains from using principles of statutory construction.").
[23] *Sealed Appellee 1 v. Sealed Appellant 1*, 767 F.3d 418, 421 (5th Cir. 2013) (citation and quotation marks omitted).
[24] *Id.*
[25] *Swarts v. Siegel*, 117 F. 13, 13 (8th Cir. 1902).
[26] *See Lawson*, 75 So.3d at 1027 ("The Court must not broaden or restrict a legislative act.").
[27] Norman J. Singer, *Sutherland Statutes and Statutory Construction* § 46:1 (7th ed. 2017).
[28] 1989 Miss. Laws Ch. 563.
[29] *Thompson v. Goetzmann*, 337 F.3d 489, 498 n.20 (5th Cir. 2003) (establishing that contemporary dictionaries are a "principal source for ascertaining the ordinary meaning of statutory language"). Notably, Mississippi courts "frequently loo[k] to dictionaries to ascertain the meaning of a word in its common or popular sense." *Lawson*, 75 So.3d at 1028 (Miss. 2011)
[30] *See* BLACK'S LAW DICTIONARY 977-78 (5th ed. 1979).

excluded workers who retained the "right to control and direct . . . the material details of how the work is to be performed."[31] These definitions echo the test long used in Mississippi to distinguish independent contractors from employees, which asks whether a worker has "the right to control . . . the details of the work."[32] Thus, *official* and *employee* did not apply to independent contractors at the time the legislature wrote those words into the Act.

This conclusion is supported by the history of Mississippi's penal statutes. Mississippi first authorized private prisons in 1992.[33] It is unlikely that legislators in 1989 thought the Act applied to a class of workers which had yet to exist. Furthermore, since 1992, the legislature has regularly distinguished private prison contractors from state employees and officials. The legislature has barred private prison contractors from using the liability shield within the Mississippi Tort Claims Act, which covers only "officer[s], employee[s], or servant[s] of the State of Mississippi or political subdivision[s] of the state."[34] The legislature has also required inmates at private prisons to file complaints regarding the conditions of their imprisonment "against the contractor and not the State of Mississippi."[35] Finally, the legislature has forced contractors to hold the state "harmless" in suits brought by inmates.[36] Given this consistency in acknowledging the difference between private prison contractors and the state,[37] it is telling that the words *agents* or *contractors* have not been grafted onto the Act in the quarter century since its passage.

---

[31] *Id*. at 471.
[32] *See Boyd v. Crosby Lumber & Mfg. Co*., 250 Miss. 433, 440 (1964).
[33] 1992 Miss. Laws Ch. 537.
[34] Mississippi authorized the construction of private prisons in 1994 Miss. Laws 1st Ex. Sess. Ch. 26, which established that the sovereign immunity provisions under Miss. Code Ann. §§ 11–46–1 *et. seq*. "shall not apply" to prison contractors. *See also Leavitt v. Carter,* 178 So. 3d 334, 338–39 (Miss. Ct. App. 2012) (finding that "the immunity conferred under the MTCA does not apply to private prisons operated under a contract with the State").
[35] Miss. Code Ann. § 47-5-1219.
[36] *Id*.
[37] *Accord In re: Otis Abron*, No. 2004-0241, 2004 WL 1638739 (Miss. AG Op. June 21, 2004) (explaining that, while direct employment by MDOC *can* implicate the separation of powers doctrine, employment at a private prison *cannot* implicate the separation of powers doctrine because private prisons are "private commercial companies").

This unremarkable interpretation is in line with how another court has interpreted a similarly drafted statute. Like the Act, Maryland's state exhaustion requirement only bars claims brought against "official[s] or employee[s]."[38] That state's highest court has held that statute does not apply to an independent contractor because they are "not . . . an official or employee."[39] That holding was rooted in the same grounds apparent in this case, namely, that (1) the ordinary meanings of *official* or *employee* do not apply to private contractors, (2) the relevant statute was "devoid of any reference to private contractors," and (3) there was "no mention" in the legislative history of "curtailing prisoner [litigation] against private contractors."[40] There is every reason to believe that the Mississippi Supreme Court would apply a similar analysis and reach the same conclusion here.

In sum, the Act clearly does not apply to private contractors. When properly construed, the Act's plain language excludes independent contractors from the term "officials or employees." As MTC is an independent contractor, claims filed against it by people like Pickens are not "under the purview" of Mississippi's administrative review procedure, and need not be exhausted.

## II. Conclusion

For these reasons, MTC's motion for summary judgment is DENIED.

**SO ORDERED**, this the 17th day of November, 2017.

s/ Carlton W. Reeves<br>
UNITED STATES DISTRICT JUDGE

---

[38] Md. Code Ann., Cts. & Jud. Proc. § 5-1001
[39] *Adamson v. Corr. Med. Servs., Inc.*, 359 Md. 238, 269 (2000).
[40] *Id*.