**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

| | |
|---|---|
| JAMES PICKENS,  ) | |
|     *Plaintiff*  ) | |
| ) | |
| vs.  ) | **Civil Action No. 3:16-cv-913-CWR-FKB** |
| ) | |
| MANAGEMENT & TRAINING  ) | |
| CORPORATION, *et al.*,  ) | |
|     *Defendants*  ) | |

**DEFENDANT'S SURREBUTTAL TO
PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE IN OPPOSITION TO
MOTION TO TAKE DEPOSITION**

**COME NOW** Defendants Management & Training Corporation, Lepher Jenkins, Grady Wallace, Terry Daniel, and Amedio Colangelo (collectively "MTC"), by counsel, and files this surrebuttal to Plaintiff's Reply to Defendant's Response in Opposition to Motion to Take Deposition (the "Reply") [Dkt. 100], as follows:

**INTRODUCTION**

Cecil McCrory has no discoverable knowledge, and his proposed deposition testimony is therefore beyond the scope of discovery. Plaintiff's Reply proves the point. This case involves a failure-to-protect claim under 42 U.S.C. § 1983, resulting from injuries Plaintiff allegedly sustained during a prison riot. But Plaintiff spends most of his Reply discussing the irrelevant public-corruption scandal that put McCrory and Epps in federal prison. Page after page, Plaintiff details the history between McCrory and Epps, quoting extensively from their criminal indictment. Plaintiff then offers his own unsubstantiated theory that MTC bribed Epps through McCrory, a former consultant for MTC. Plaintiff concludes that McCrory may have knowledge of MTC's corrupt business practices, therefore justifying his deposition.

1

This argument has nothing to do with the relevance of McCrory's testimony to Plaintiff's claims or MTC's defenses. Indeed, McCrory's proposed testimony is irrelevant and in no way makes MTC's culpability for the riot more probable. Instead, Plaintiff's argument reveals his true intent: To gather discovery characterizing MTC as a corrupt enterprise for purposes of presenting this conspiracy theory to the jury. This purpose is wholly improper. Accordingly, this Court should deny Plaintiff's motion and enter a protective order prohibiting Plaintiff from taking McCrory's deposition.

## LAW AND ARGUMENT

**A.    MTC did not agree to McCrory's deposition.**

As an initial matter, Plaintiff contends that MTC agreed to McCrory's deposition. In support, Plaintiff mischaracterizes emails between Plaintiff's counsel and one of MTC's former attorneys, H. Richard Davis. But those emails merely show that Plaintiff's counsel asked for Davis's availability for a deposition, and that Davis provided that availability. Nowhere in those emails does Davis advise that MTC has agreed to the deposition. And that is because MTC had not agreed to it. It was not until after MTC's lead counsel, R. Jarrad Garner, reviewed Plaintiff's motion and alerted MTC to it, that MTC learned of and elected to oppose the deposition.

The emails upon which Plaintiff relies were sent on October 11, 2018—the same day that Plaintiff filed his motion to take McCrory's deposition. These emails merely demonstrate Plaintiff's initial inquiry into opposing counsel's availability. But MTC—the defendant and client—was entitled to review that motion and consider objecting within the time allowed under applicable procedural rules. MTC did so and objected within the time allowed. Plaintiff cannot force MTC to sit through an irrelevant, burdensome deposition based solely on an initial, courteous exchange between counsel.

**B.     McCrory's deposition is beyond the scope of discovery.**

Under Rule 30(a)(2)(B), Plaintiff has the burden to show that McCrory possesses discoverable knowledge and that his testimony falls within the scope of discovery. *See* F.R.C.P. 30(a)(2)(B); *Pierron v. L.P.D.C.*, 2016 U.S. Dist. LEXIS 126939, at *2 (E.D. La. Sept. 16, 2016) (citing *Jones v. Johnson*, 2010 U.S. Dist. LEXIS 110060 (E.D. La. Sept. 27, 2010)). To do so, Plaintiff must establish that McCrory's testimony is relevant to either party's claims or defenses. F.R.C.P. 26(b)(1). That is, Plaintiff must show that McCrory's testimony will make the existence of any consequential fact more or less probable than without the evidence. *E.g. Enron Corp. Sav. Plan v. Hewitt Assocs., L.L.C.*, 258 F.R.D. 149, 159 (S.D. Tex. 2009).

Plaintiff has not met that burden here—nor could he. This case involves a failure-to-protect claim under § 1983 for injuries Plaintiff allegedly sustained during a prison riot. Despite filing 289 pages in support of his Reply, Plaintiff has not shown that McCrory has knowledge of facts tending to establish MTC's culpability. Instead, Plaintiff offers two alternative theories of relevance, neither of which have merit.

First, Plaintiff contends that MTC negligently implemented its Management Agreement between it and MDOC, which negligence lead to the riot. (Reply p. 3.) Plaintiff then notes that McCrory served as MTC's consultant for business development and government relations. Plaintiff concludes that, as a consultant, McCrory possesses knowledge of how MTC performed its contract. But McCrory's position as a consultant for business development and government relations in no way concerns MTC's day-to-day operations of Walnut Grove or any facility. Developing business and lobbying for MTC did not—and could not—put McCrory in the position to appreciate and understand how MTC performed its duties under the Management Agreement. This is supported by the contract between MTC and McCrory itself. That contract

3

does not mention Walnut Grove or any facility by name; it does not require McCrory to oversee or be involved in the day-to-day operations of any facility; and it does not mention or require McCrory's oversight or involvement in MTC's operations or compliance with the Management Agreement. McCrory's contract is narrow in scope and speaks for itself: McCrory was only a consultant and had no responsibility or involvement in MTC's operations. Plaintiff's argument to the contrary lacks any support. Instead, it is MTC's employees that have this operational knowledge, and Plaintiff has already deposed them.

Second, Plaintiff contends that McCrory may have knowledge that MTC engaged in alleged "corrupt business practices," and that these "corrupt business practices" may have contributed to the riot. (Reply pp. 8-9.) This argument fails for a number of reasons. Most important, this position relies wholly on Plaintiff's conspiracy theory that MTC bribed Epps through McCrory. In support, Plaintiff relies heavily on McCrory's previous deposition testimony. Specifically, Plaintiff cites McCrory's past testimony for the proposition that MTC knew it was paying McCrory, who was ultimately paying Epps, for 250 additional inmates and direct access to Epps. (*E.g.* Reply at 4.) Obviously, MTC disputes this fact. But a review of the transcript reveals that McCrory's testimony on this point is pure speculation:

> Q: Uh-huh. Was it clear from the overall conversation that [MTC] understood you were paying Epps or not?
>
> A: In my mind. In my mind, it was.

(Dep. 57:4-8, Dkt. 100-3.) Nowhere does McCrory's testimony confirm that MTC knew McCrory was bribing Epps—because MTC did *not* know.

Plaintiff also relies on McCrory and Epps's criminal indictment. But as juries are instructed, indictments are not evidence. *U.S. v. McGill*, 815 F.3d 846, 938 (D.C. Cir. 2016). Indictments set forth charges that must be proven beyond a reasonable doubt. Similarly, Plaintiff

relies on the State's complaint against MTC. Again, a civil complaint is not evidence, but sets forth claims that must be proven by a claimant. Significantly, Attorney General Jim Hood settled the State's claims against MTC, and MTC's Management Agreement remains in full force and effect with the State of Mississippi. Plaintiff's reliance on the criminal indictment of third parties and the State's now-resolved claims is meaningless. Moreover, Plaintiff's entire position that McCrory has knowledge of any alleged corrupt business practices on MTC's behalf is entirely speculative.

Regardless, even if Plaintiff were correct that Epps provided MTC with favorable official action—which MTC vehemently denies—Epps's action in no way proves culpability for a random, single prison riot. Here, Plaintiff is attempting to manufacture relevance between "corruption" and "negligence" for an impermissible purpose: To obtain and present evidence to the jury characterizing MTC as a corrupt enterprise. While Plaintiff denies that purpose, his Reply belies that position. Plaintiff spends page after page detailing McCrory and Epps's criminal history without articulating how this history legitimately relates to his claims or MTC's defenses.

**C.    McCrory's deposition is not proportional to the needs of this case and would impose undue burden and expense on MTC.**

Even if discovery is relevant, it must still be proportional to the needs of the case, considering, among other things, the importance of the issues at stake, the importance of the discovery in resolving those issues, and whether the burden and expense of the proposed discovery outweighs its likely benefit. F.R.C.P. 26(b)(1).

McCrory's proposed testimony is not relevant. Even so, the burden and expense of taking his deposition is not proportional to the needs in this case. McCrory and Epps's relationship and criminal history have no bearing on the actual issue at stake—whether MTC is culpable for a

5

prison riot. And McCrory's testimony about his relationships with Epps's and MTC is not important to resolving that culpability. Accordingly, an order requiring MTC's counsel to travel 600 miles to Talladega, Alabama and back for a two to three-hour deposition—a roughly eleven and a half hour endeavor, excluding preparation—would impose undue burden and expense on MTC for the sole purpose of Plaintiff learning what he could have gleaned from McCrory's previous deposition transcript (frankly, nothing).

In his Reply, Plaintiff notes that MTC's counsel of record are employed by a firm with offices in Alabama. Plaintiff argues that MTC could send an attorney licensed in Mississippi from the firm's Birmingham office to the deposition instead, shortening the trip. This proposal is not realistic. MTC chose the undersigned counsel to represent it. MTC should not be required to pay for another attorney unfamiliar with this case (or unfamiliar with 1983 cases, generally) to participate in this case, get up to speed, and sit for a deposition. Regardless, the attorney Plaintiff refers to in his Reply—J. Jeffrey Trotter—resides in Madison, Mississippi and works primarily in the firm's Jackson office. Trotter would be required to make the same burdensome trip to the deposition as the undersigned counsel.

Plaintiff also proposes that MTC's counsel could hire a private driver to chauffer them to Talladega, Alabama, so that MTC's counsel could work on other matters during the trip. Plaintiff insinuates this practice is common. To the contrary, this proposal is absurd and more unrealistic than his first.

Last, Plaintiff proposes that MTC skip the deposition. While McCrory's deposition testimony is certainly irrelevant, no competent attorney would fail to appear for a deposition taken by opposing counsel, particularly where—as here—Plaintiff is attempting to use the

deposition to procure irrelevant and unfairly prejudicial testimony against MTC. This final proposal is as unrealistic and absurd as the first two.

**WHEREFORE,** MTC requests that this Court deny Plaintiff's motion and enter a protective order prohibiting Plaintiff from taking McCrory's deposition.

Respectfully submitted, this the 30th day of November, 2018.

> **MANAGEMENT & TRAINING CORPORATION, ET AL.**
>
> By: */s/ R. Jarrad Garner*
> R. Jarrad Garner (MSB# 99584)
> Lindsey O. Watson (MSB# 103329)
> Adams and Reese, LLP
> 1018 Highland Colony Parkway, Suite 800
> Ridgeland, Mississippi 39157
> Office: (601) 353-3234
> Fax:    (601) 355-9008
> jarrad.garner@arlaw.com
> lindsey.watson@arlaw.com

## CERTIFICATE OF SERVICE

I, R. Jarrad Garner, attorney for Defendants, do hereby certify that I have, this day, filed the foregoing with the Clerk of Court via the CM/ECF system, which has caused a true and correct copy to be served on all counsel of record.

Dated: November 30, 2018.

> */s/ R. Jarrad Garner*
> R. Jarrad Garner